**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **Ornua Foods North America, Inc.**, and **Ornua Co-Operative Limited**, | Civil Action No.: _____ |
| Plaintiffs, | |
| v. | |
| **Abbey Specialty Foods, LLC**, | |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

Plaintiffs Ornua Foods North America, Inc. ("Ornua N.A.") and Ornua Co-operative Limited ("Ornua Co-op," and collectively "Ornua") bring this action against Abbey Specialty Foods, LLC ("Abbey") for injunctive relief and damages based on trade dress infringement, false designation of origin, violation of New York unfair competition law, and related claims.

### Preliminary Statement

1.      Ornua seeks damages and permanent injunctive relief barring Abbey from advertising, marketing, distributing, or selling butter products using trade dress that is confusingly similar to Ornua's federally registered Kerrygold Trade Dress, used in connection with Ornua's top-quality imported butter. This Complaint and forthcoming evidence show that Abbey is engaged in willful trade dress infringement. On information and belief, having full knowledge of Ornua's distinctive Kerrygold Trade Dress, Abbey launched a competing product with packaging that copies the Kerrygold Trade Dress to take advantage of its good will and strong reputation in the U.S. market:

 

2.     Abbey's choice in designing the Tipperary packaging, which is substantially similar to the Kerrygold Trade Dress packaging for Kerrygold brand Irish butter, shows Abbey's deliberate effort to trade off the enormous goodwill and strong reputation that Ornua has built up in the Kerrygold brand for many years. Abbey could have chosen any packaging for its butter. Instead, it intentionally chose packaging that is confusingly similar to the Kerrygold Trade Dress to take advantage of the strong reputation and good will associated with Ornua's Kerrygold brand.

3.     The harm that Abbey is causing, and intends to cause, is incalculable. Consumers wanting to purchase Ornua's Kerrygold Irish butter will likely be misled into thinking that Abbey's Irish butter is associated with Ornua and its Kerrygold brand, when it is not. Such sales will inflict immeasurable destruction to the good will and reputation associated with the Kerrygold Trade Dress, developed at great effort and expense over many years. This kind of harm cannot be fixed with money damages alone but requires permanent injunctive relief barring Abbey from advertising, marketing, distributing, or selling butter products using trade dress that is confusingly similar to Ornua's federally registered Kerrygold Trade Dress.

### Parties

4.     Plaintiff Ornua Co-op, formerly known as the Irish Dairy Board Co-operative Limited, is an Irish Industrial & Provide Society, with its principal place of business at Grattan House, Mount Street, Lower Dublin 2, Ireland.

5.      Plaintiff Ornua N.A. is a New York corporation, with its principal place of business located at 1007 Church Street, Suite 800, Evanston, Illinois 60201. Ornua N.A. is a wholly owned subsidiary of Ornua Co-op. Ornua Co-op caused Ornua N.A. to be incorporated in the State of New York in 1981 to oversee distribution and marketing of its products in North America and has licensed to Ornua N.A. the right to use the Kerrygold Trade Dress in the United States.

6.      On information and belief, Defendant Abbey is a New Jersey corporation, with its principal place of business located at 18 Spielman Road, Fairfield, New Jersey 07004.

**Jurisdiction and Venue**

7.      Under 28 U.S.C. §§ 1131 and 1138(a), this Court has original subject matter jurisdiction over Ornua's First Cause of Action for federal trade dress infringement under 15 U.S.C. § 1114, and Second Cause of Action for federal unfair competition and false advertising under 15 U.S.C. § 1125(a).

8.      Under 28 U.S.C. §§ 1338(b) and 1367(a), this Court has supplemental jurisdiction over Ornua's Third Cause of Action for New York trade dress infringement, Fourth Cause of Action for New York deceptive trade practices, and Fifth Cause of Action for common law unfair competition, because those claims form part of the same case and controversy as Ornua's federal claims, and arise from a common nucleus of operative facts.

9.      This Court has personal jurisdiction over Abbey because, on information and belief, Abbey has intentionally sold products in this jurisdiction using the infringing packaging and trade dress. Abbey has thus purposefully directed its activities at residents of this forum and this litigation results from injuries that arise out of or relate to those activities.

10.    Venue is proper in this judicial district under 28 U.S.C. 1391(b) and (c) because, on information and belief, a substantial part of the events giving rise to the claims occurred in this district.

**Ornua owns the distinctive Kerrygold Trade Dress
for butter and other dairy products.**

11.    The Kerrygold brand includes the word mark, plain and stylized, and its distinctive trade dress for butter and other products.

12.    The Kerrygold Trade Dress is currently protected by a federal registration with the United States Patent and Trademark Office, U.S. Reg. No. 6,656,205, and Ornua holds other federal registrations that are also part of the Kerrygold brand, including, for example, U.S. Reg. Nos. 6,656,187; 5,630,832; and 5,965,667.

| Mark | Registration Number Registration Date |
|---|---|
| | Reg. No. 6,656,205 March 1, 2022 |
| | Reg. No. 6,656,187 March 1, 2022 |
| | Reg. No. 5,630,832 December 18, 2018 |
| | Reg. No. 5,965,667 January 21, 2020 |

13.    The Kerrygold Trade Dress, relevant to its silver packaging, includes:

    a.    a three-dimensional configuration of product packaging in the nature of a metallic silver box;

    b.    a green quadrilateral with a curved bottom containing the word "KERRYGOLD" in white on top of which is a design of a black and white cow standing on a metallic silver horizontal line and eating green grass, and, at the bottom, appear three small yellow flowers with black centers with a metallic silver curved line on each side;

    c.    the stylized phrase "MILK FROM IRISH GRASS-FED COWS" appears in green arced wording above the cow;

    d.    the stylized phrase "PURE IRISH BUTTER" appears in green wording below the green quadrilateral; and

    e.    in the upper right corner is a dark gold design of a cow eating grass with the word "IRISH" above it with a dot on each side and the words "GRASS-FED COWS" below it, all of which are depicted in a dark gold oval with a metallic gold background.

14.    The Kerrygold Trade Dress also enjoys strong common law rights.

**The Kerrygold Trade Dress**

15.    For more than 25 years, Ornua has invested substantial time, effort, and resources promoting the Kerrygold brand—including the distinctive Kerrygold Trade Dress —to the public.

16.    Ornua advertises in national print media, television programming, digital and social media, other channels, and offers product demonstrations and price promotions. Since 2015, Ornua has spent more than $287 million to develop its Kerrygold brand in North America. This includes spending on national print media, television advertising, digital and social media, product demonstrations, and price promotions.

17.    Ornua has placed advertisements in magazines such as Food & Wine, Bon Appetit, Cooking Light, Eating Well and Cherry Bombe.

  

18.     Ornua maintains active social media accounts, where it posts numerous photos highlighting its Kerrygold Trade Dress. These accounts include Facebook (facebook.com/KerrygoldUSA), Instagram (Instagram.com/KerrygoldUSA), and Twitter (twitter.com/KerrygoldUSA), and others.

  

19.     Ornua also advertises on U.S. television and online, with commercial spots like "Go Behind the Bake with Zoë François" and "Kerrygold's Dynamite Shop Cooking Series: Buttermilk Cupcakes with Buttercream Frosting," which may be viewed on Kerrygold USA's YouTube page. See https://www.youtube.com/@KerrygoldUSA/videos,

https://www.youtube.com/watch?v=T2XlIZrslYk, and https://www.youtube.com/watch?v=IL-nUGjG6a8. These commercial spots feature the trade dress packaging for Kerrygold butter.

20.     As a result of Ornua's efforts, the public has come to recognize and rely on the Kerrygold Trade Dress, including its distinctive silver packaging, to signify high-quality butter. Kerrygold brand butter is the No. 2 selling butter brand and the No. 1 selling imported butter brand in the United States.

21.     From 2018 to 2022, sales of Kerrygold brand butter bearing the silver Kerrygold Trade Dress grew more than 100 percent. In 2022, as a result of this exponential growth, Ornua sold more than 16 million packages of premium butter bearing the silver Kerrygold Trade Dress, equating to more than $70 million dollars in sales.

22.     In terms of market share, Ornua's Kerrygold brand butter comprises over 17 percent of the overall market for premium butter products in the United States. Further, when considered individually, The Kerrygold brand unsalted premium butter, which bears its distinctive silver Kerrygold Trade Dress, has achieved a market share of three percent of the overall U.S. market and 30 percent of the U.S. market for unsalted premium butter products.

23.     The Kerrygold Trade Dress is distinctive or has acquired distinctiveness when applied to Ornua's butter and dairy products, and serves to identify those products' source.

24.     Among top-selling butter brands in the United States, the Kerrygold Trade Dress

is distinctive:

  

**Abbey willingly infringes the Kerrygold Trade Dress**

25.     Abbey sells its butter under the name Tipperary in packaging that copies many of the elements of the Kerrygold Trade Dress. The similarities are obvious and clearly intentional. Abbey's product uses the following elements (the "Accused Trade Dress"):



26.     Abbey is using the Accused Trade Dress to market and sell imported butter in the United States in direct competition with Kerrygold butter.

27.     Although both Ornua and Abbey compete in the premium butter category, butter is a low consideration product, making it less likely that consumers will carefully scrutinize any small differences between the Tipperary brand packaging and the Kerrygold butter packaging bearing the Kerrygold Trade Dress.

28.     As a result, consumers who encounter these products are likely to be confused about the source, origin, or sponsorship of Abbey's Tipperary butter. Already, Abbey's

Tipperary butter is being sold in the same marketing channels adjacent to Kerrygold brand products.





29.    Abbey is aware of the Kerrygold Trade Dress, and, on information and belief, has been since long before Abbey began selling its Tipperary brand butter products in the United States.

30.    On information and belief, with full knowledge and awareness of Ornua and its distinctive Kerrygold Trade Dress, Abbey adopted and launched its Tipperary brand butter product. Further, on information and belief, Abbey deliberately designed the package for its Tipperary butter to closely imitate the Kerrygold Trade Dress in the U.S. market with the intention of taking advantage of Ornua's goodwill and brand recognition in the United States.

31.     Since launching, Abbey has sold its Tipperary butter product to the identical consumers of Ornua's Kerrygold brand butter products, and through identical channels of trade, in direct competition with Ornua's Kerrygold brand butter products.

32.     On October 11, 2022, Ornua sent Abbey a cease and desist letter, warning Abbey that its unsalted butter product sold in the United States uses packaging that infringes the Kerrygold Trade Dress. Abbey responded to Ornua's letter on October 24, 2022, and since that time Ornua has attempted to reach an agreement with Abbey to protect the Kerrygold Trade Dress, including by responding to Abbey's letter on December 9, 2022.

33.     On December 19, 2022, without notice or further discussions with Ornua, Abbey filed in the United States District Court for the District of New Jersey a declaratory judgment action seeking a declaration that the Tipperary butter packaging did not infringe on the Kerrygold Trade Dress.

34.     By reason of Abbey's acts, Ornua has and will continue to suffer damage to its business, reputation, good will, profits, and sales. Unless enjoined, Abbey will continue to sell its Tipperary brand butter products using the infringing Accused Trade Dress, which will irreparably damage Ornua. Ornua's remedies at law are not adequate to compensate Ornua for all the resulting injuries caused by Abbey.

**First Cause of Action**

(Federal Trademark Infringement under 15 U.S.C. § 1114)

35.     Ornua realleges and incorporates herein the allegations contained in the foregoing paragraphs of this Complaint.

36.     The Kerrygold Trade Dress is a valid protectable trademark.

37.    The Kerrygold Trade Dress is distinctive. A significant number of the consuming public associated with Kerrygold Trade Dress with a single source, Ornua.

38.    Ornua Co-op owns the Kerrygold Trade Dress and has licensed Ornua N.A. to use the same.

39.    The Kerrygold Trade Dress is nonfunctional. The Kerrygold Trade Dress offers no utilitarian advantage and Ornua's advertising does not tout any utilitarian advantages of the Kerrygold Trade Dress. The Kerrygold Trade Dress results from a comparatively simple and inexpensive method of manufacture.

40.    There are plentiful alternative packaging designs available to Abbey that would not make its products more costly to sell nor make consumers less willing to pay for those products.

41.    Abbey used and continues to use the Accused Trade Dress without Ornua's license, consent, or authorization.

42.    Abbey used and continues to use the Accused Trade Dress, in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner that is likely to cause confusion with the Kerrygold Trade Dress among ordinary consumers as to the source, sponsorship, affiliation, or approval of Abbey and Ornua's goods.

43.    The Accused Trade Dress is a reproduction, counterfeit, copy, or colorable imitation of Ornua's Kerrygold Trade Dress.

44.    Abbey's unlicensed, un-consented to, and otherwise unauthorized use of the Accused Trade Dress is likely to cause confusion, to cause mistake, or to deceive.

45.    Abbey has knowingly and willfully used and continues to knowingly and willfully use the Accused Trade Dress to cause confusion, to cause mistake, or to deceive consumers.

12

46.    By virtue of Abbey's acts hereinabove described, Abbey committed and continues to commit acts of trade dress infringement in violation of, *inter alia*, Section 32(1)(a), 15 U.S.C. § 1114(1)(a).

47.    Abbey's aforesaid acts of trade dress infringement caused and will continue to cause damage and irreparable harm to Ornua, and are likely to continue unabated, thereby causing further damage and irreparable harm to Ornua and to the valuable goodwill symbolized by and associated with its distinctive Kerrygold Trade Dress, unless enjoined and restrained by the Court.

48.    Ornua has no adequate remedy at law and will suffer irreparable injury if Abbey is allowed to continue to wrongfully use Ornua's Kerrygold Trade Dress.

49.    Because of Abbey's infringement of Ornua's Kerrygold Trade Dress, including Abbey's willful and intentional conduct, Ornua is entitled to injunctive relief, damages, extraordinary damages, fees, and costs pursuant to Section 35, 15 U.S.C. § 1117.

**Second Cause of Action**

(Federal Unfair Competition and False Advertising under 15 U.S.C. § 1125(a))

50.    Ornua realleges and incorporates herein the allegations contained in the foregoing paragraphs of this Complaint.

51.    Abbey's unlicensed, un-consented to, and otherwise unauthorized copying and use of the Kerrygold Trade Dress in connection with its advertising, marketing, promotion, offer, sale, and/or provision of its butter products constitutes a false and misleading designation of origin and a false and misleading representation of facts, which:

a.    is likely to cause confusion, to cause mistake, or to deceive consumers and the public as to the affiliation, connection, or association of Abbey with Ornua, or as to

the origin, sponsorship, or approval of Abbey's goods or commercial activities by Ornua; and

      b.    in commercial advertising or promotion, misrepresent the nature, characteristics, or qualities of Abbey's goods, services, or commercial activities.

52.    By virtue of Abbey's acts hereinabove described, Abbey committed and continues to commit acts of unfair competition and false advertising in violation of, *inter alia*, Section 43(a), 15 U.S.C. § 1125(a).

53.    Abbey's aforesaid acts of unfair competition and false advertising caused and will continue to cause damage and irreparable harm to Ornua, and are likely to continue unabated, thereby causing further damage and irreparable harm to Ornua and to the valuable goodwill symbolized by and associated with its distinctive Kerrygold Trade Dress, unless enjoined and restrained by the Court.

54.    Ornua has no adequate remedy at law and will suffer irreparable injury if Abbey is allowed to continue to wrongfully use Ornua's Kerrygold Trade Dress.

55.    Because of Abbey's unfair competition and false advertising, including Abbey's willful and intentional conduct, Ornua is entitled to injunctive relief, damages, extraordinary damages, fees, and costs pursuant to Section 35, 15 U.S.C. § 1117.

### Third Cause of Action

(New York Trade Dress Infringement, N.Y. Gen. Bus. Law § 360)

56.    Ornua realleges and incorporates herein the allegations contained in the foregoing paragraphs of this Complaint.

57.    The Kerrygold Trade Dress is a valid and protectable trademark under New York law.

58.     The Kerrygold Trade Dress is distinctive. A significant number of the consuming public associated the Kerrygold Trade Dress with a single source, Ornua.

59.     Ornua Co-op owns the Kerrygold Trade Dress and has licensed to Ornua N.A. the right to use the same.

60.     The Kerrygold Trade Dress is nonfunctional. The Kerrygold Trade Dress offers no utilitarian advantage and Ornua's advertising does not tout any utilitarian advantages of the Kerrygold Trade Dress. The Kerrygold Trade Dress results from a comparatively simple and inexpensive method of manufacture.

61.     There are plentiful alternative packaging designs available to Abbey that would not make its products more costly to sell nor make consumers less willing to pay for those products.

62.     Abbey used and continues to use the Accused Trade Dress without Ornua's license, consent, or authorization.

63.     Abbey used and continues to use the Accused Trade Dress, in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner that is likely to cause confusion with the Kerrygold Trade Dress among ordinary consumers as to the source, sponsorship, affiliation, or approval of Abbey and Ornua's goods.

64.     The Accused Trade Dress is a reproduction, counterfeit, copy, or colorable imitation of Ornua's Kerrygold Trade Dress.

65.     Abbey's unlicensed, un-consented to, and otherwise unauthorized use of the Accused Trade Dress is likely to cause confusion, to cause mistake, or to deceive.

66.     Abbey has knowingly and willfully used and continues to knowingly and willfully use the Accused Trade Dress to cause confusion, to cause mistake, or to deceive consumers.

15

67.     By virtue of Abbey's acts hereinabove described, Abbey committed and continues to commit acts of trade dress infringement in violation of N.Y. Gen. Bus. Law § 360.

68.     Abbey's aforesaid acts of trade dress infringement caused and will continue to cause damage and irreparable harm to Ornua, and are likely to continue unabated, thereby causing further damage and irreparable harm to Ornua and to the valuable goodwill symbolized by and associated with its distinctive Kerrygold Trade Dress, unless enjoined and restrained by the Court.

69.     Ornua has no adequate remedy at law and will suffer irreparable injury if Abbey are allowed to continue to wrongfully use Ornua's Kerrygold Trade Dress.

**Fourth Cause of Action**

(New York Deceptive Trade Practices, N.Y. Gen. Bus. Law § 349(a))

70.     Ornua realleges and incorporates herein the allegations contained in the foregoing paragraphs of this Complaint.

71.     Abbey's acts, including the unlawful, unauthorized use and imitation of the Kerrygold Trade Dress in connection with the sale, offering for sale, distribution, and advertising of competing butter products, causes a likelihood of confusion or of misunderstanding among ordinary consumers as to the source, sponsorship, approval, certification, affiliation, connection, or association of Abbey and Ornua's goods.

72.     By virtue of Abbey's acts hereinabove described, Abbey committed and continues deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349(a).

73.     The aforesaid deceptive trade practices caused and will continue to cause damage and irreparable harm to Ornua and are likely to continue unabated, causing further damage and

irreparable harm to Ornua and to the valuable goodwill symbolized by and associated with its distinctive Kerrygold Trade Dress, unless enjoined and restrained by the Court.

74.     Ornua has no adequate remedy at law and will suffer irreparable injury if Abbey is allowed to continue to engage in these deceptive trade practices.

### Fifth Cause of Action

(Common Law Unfair Competition)

75.     Ornua realleges and incorporates herein the allegations contained in the foregoing paragraphs of this Complaint.

76.     Abbey's unlawful and unauthorized use and imitation of the Kerrygold Trade Dress in connection with the sale, offering for sale, distribution, and advertising of competing butter products, constitutes infringement, passing off, copying, imitation, and misappropriation of Ornua's intellectual property, unjust enrichment of Abbey, and unfair competition with Ornua in violation of Ornua's rights under the common law of the State of New York and other states of the United States.

77.     Abbey's willful acts of misrepresentation, fraud, and deceit have unjustly enriched Abbey by exploiting Ornua's reputation in the market, caused harm to Ornua, and violated Ornua's rights.

### Jury Demand

78.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Ornua requests a jury trial of all issues that may be tried to a jury in this action.

**Prayer for Relief**

79.    Plaintiff Ornua thus prays for an Order and Judgment:

a.    Entering a permanent injunction enjoining Abbey, its officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with Abbey, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from manufacturing, marketing, distributing, or selling butter or other dairy products using the Accused Mark or the Accused Trade Dress, or any other butter or dairy products that use, imitate, or copy any of the Kerrygold Trade Dress ("Infringing Products");

b.    Directing Abbey to file with this Court and serve on Ornua's counsel within 30 calendar days after service of an injunction, a report under oath setting forth in detail the manner and form in which Abbey has complied with the injunction;

c.    Directing that (i) all point-of-sale materials, labels, signs, boxes, prints, catalogues, line sheets, marketing materials, internet web pages, metatags, packages, papers, other trade dress, and advertisements in the possession of control of Abbey comprising or bearing images, illustrations, or representations of the Infringing Products, the Kerrygold Trade Dress, or the Kerrygold name be delivered to Ornua's counsel or destroyed in accordance with written instructions from Ornua; (ii) Abbey disclose the identities of the vendors, manufacturers, distributors, suppliers, retailers, and e-tailers of the Infringing Products; and (iii) all Infringing Products be delivered to Ornua or destroyed in accordance with written instructions from Ornua;

d.    Ordering an accounting of Abbey's profits arising from Abbey's unfair competition and trademark infringement;

        e.      Ordering an award of Abbey's profits to Ornua, including disclosure of the number of Infringing Products sold in the United States and an accounting of the gross revenue derived from sale of the Infringing Products;

        f.      Ordering an award of damages sustained by Ornua;

        g.      In the alternative to actual damages and products, ordering an award of statutory damages in an amount of not more than $2,000,000 per counterfeit mark per type of services and/or goods sold or offered for sale by Abbey;

        h.      Ordering an award of treble the actual damages awarded for use off a counterfeit mark pursuant to 15 U.S.C. § 1117(b). Ornua reserves the right to elect, any time before final judgment, statutory damages under 15 U.S.C. § 1117(c) in lieu of actual damages and profits;

        i.      Ordering pre-judgment and post-judgment interest on the above damage awards;

        j.      Ordering an award of costs and reasonable attorneys' fees and expenses incurred by Ornua in connection with this action; and

        k.      Ordering such other and further relief that this Court may deem just.

Dated:  New York, New York           Respectfully submitted,
        February 13, 2023

                          **BRYAN CAVE LEIGHTON PAISNER LLP**

                       By: */s/ Jonathan E. Ginsberg*
                            Jonathan E. Ginsberg
                            1290 Avenue of the Americas
                            New York, New York 10104
                            Tel: (212) 541-2000
                            jon.ginsberg@bclplaw.com

                       *Attorneys for Ornua Foods North America, Inc.*
                       *and Ornua Co-operative Limited*

19